UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JEAN-CLAUDE FRANCHITTI,

            Plaintiff,

      -against-                                      03 Civ. 7496 (LAK)

BLOOMBERG, L.P., et ano.,

            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**
**(Corrected)**

Appearances:

            Robert B. Davis
            *Attorney for Plaintiff*

            Thomas H. Golden
            WILLKIE FARR & GALLAGHER
            *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff, a Caucasian man born in France, brought this employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, as amended,[1] 42 U.S.C. §§ 1981-81a, and provisions of state and municipal law. He claimed that he was subjected to a hostile work environment because he was French and that he then was fired for complaining about it. The case

---

[1] 42 U.S.C. § 2000e *et seq.*

was tried, after extensive pretrial proceedings, before me. I found that the claim was utterly baseless, that most of the incidents complained of had not occurred and that plaintiff had greatly exaggerated the few that did, that plaintiff never complained of any alleged harassment, that plaintiff and his friend and principal non-party witness repeatedly lied, and that plaintiff in fact was fired because of his inability to get along with his supervisor, Dr. Sandra Hutchins. The case was dismissed.

The defense of this action cost the defendants over $1.3 million in legal fees and disbursements. They now seek an award of attorneys fees in the amount of $150,000, representing about 55 percent of the trial related costs associated with the work of the two lawyers who primarily defended the action, to "send a strong and important message that severe consequences flow from the type of litigation misconduct in which Franchitti engaged."[2]

*Facts*

Franchitti brought this action in 2003.[3] In 2004, he amended the complaint to add Dr. Hutchins as a defendant. Sixteen depositions were taken, many necessitated by Franchitti's evasive and equivocal deposition testimony. Defendants moved for summary judgment dismissing the complaint. Magistrate Judge Francis – who was obliged to assume the truth of plaintiff's evidence – recommended that the motion be granted in part and denied in part. That recommendation was adopted and defendants' objections overruled, whereupon the case proceeded to trial, albeit not

---

[2] Def. Mem. 1.

[3] I note that this is the third employment discrimination action brought or threatened by the plaintiff. He obtained settlements on the two prior claims. In accordance with *Outley v. City of New York,* 837 F.2d 587, 591 (2d Cir. 1988), I did not consider this in deciding the case.

before briefing and decision on Franchitti's motion *in limine.*

The trial consumed two to three days. Plaintiff testified himself and called most of the defendants' employees who allegedly were involved in the incidents at question as well as his friend and former Bloomberg employee, Joanna Gilberti. At the conclusion of plaintiff's case, I granted defendants' Rule 52(c) motion for judgment on partial findings and dismissed the case. In doing so, I found, *inter alia,* the following:

> "[I]t is my deeply held belief that this lawsuit is a trumped up fiction, the object of which is to turn the plaintiff's misfortune at being fired, which finds its origins in his inability to get along with his supervisor, into a profit in an attempt to relieve the quite considerable financial pressure that he has been under for a long time . . . . I am persuaded that Mr. Franchitti lied repeatedly in this trial, and he did it deliberately and he did it for financial gain. I am persuaded that Ms. Gilberti lied repeatedly in this trial, that she lied in [Franchitti's] bankruptcy case testimony that she gave, that she lied in both cases. I think there is a reasonable basis for inquiring into the question of whether this case and Ms. Gilberti's case [Gilberti also has made an employment discrimination claim against Bloomberg in which she is represented by an attorney to whom she was referred by Franchitti's attorney] are part of a corrupt scheme between the two of them to extort money from Bloomberg on the basis of imagined wrongs and blatantly false testimony."[4]

I was critical also of certain testimony offered by Bloomberg. Defendants unsurprisingly and credibly denied that there had been any harassment or anti-French animus. Prior to trial, however, they acknowledged that Dr. Hutchins was the impetus for Franchitti's termination. Dr. Hutchins supervisor, Glenn Jacoby, testified at his deposition that Dr. Hutchins had recommended that Franchitti be fired, that her description of his performance "was the primary driving force" behind the decision, and "that it was Dr. Hutchins' opinion of [plaintiff's] status that

---

[4] Tr. 455-56. *See also* Tr. 419-20.

led to his termination."[5] At trial, however, Jacoby recanted part of that testimony, saying that he did not recall Dr. Hutchins recommending plaintiff's termination.[6] Lisa Jennings, the Bloomberg human resources official who made or was involved in the ultimate termination decision, said that Dr. Hutchins never told her that Franchitti should be fired.[7]

I did not credit that testimony,[8] finding instead the following:

> "I don't have much doubt that Dr. Hutchins . . . played a significant role in the fact that the plaintiff was terminated. There is nothing wrong with that. A supervisor in a private entity is entitled to decide to get rid of an employee because of any conceivable reason but for those prohibited by law.
>
> "The reasons that Dr. Hutchins had for wanting to get rid of the plaintiff, whether one agrees with them or not, were entirely lawful. There was no reason why she couldn't have recommended his termination.
>
> "And, I am persuaded that whether she uttered the words . . . that he [should] be terminated or not, nobody at Bloomberg, in a position to make the decision, had the slightest doubt that that was her desire and that she thought it was for the good of the company and they [the decision makers] accommodated her.
>
> "So, for Mr. Jacoby to try to cover that up was really unnecessary. But, quite apart from unnecessary, it wasn't exactly straightforward . . . .
>
> "It is not material because the real cause, in my estimation, was a perfectly

---

[5] *Id.* 433-34.

[6] *Id.*

[7] *Id.* 333.

[8] Although Dr. Hutchins said that she was not "campaigning" for Franchitti's termination at the time she reported on his conduct to Jacoby (Tr. 370), a statement that I could find credible only by relying a narrow definition of the word "campaigning," I nevertheless found, and continue to believe, that her testimony in all other respects was entirely credible.

lawful one, and it didn't have anything to do with what the plaintiff claims here."[9]

*Discussion*

Courts are empowered by the Civil Rights Act,[10] 42 U.S.C. § 1988(b), and the New York City Administrative Code[11] to award attorneys' fees to a prevailing defendant in cases brought under statutes upon which Franchitti brought this suit. Courts nevertheless must be extremely cautious in using that power to avoid chilling the vital ability of persons who believe that they are victims of discrimination to seek recourse. They must remain acutely aware that claims of discrimination in the workplace often can be difficult to prove, even where discrimination actually has occurred, and that an award of attorneys' fees to a prevailing defendant in such a case usually will not be warranted.

These considerations underlie the governing standard here. In *Christianburg Garment Co. v. EEOC*,[12] the Supreme Court held that a district court, in its discretion, may award attorneys' fees to a prevailing defendant in a Title VII case if the plaintiff's "claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigation after it clearly became so."[13]

---

[9] *Id.* 458-59.

[10] 42 U.S.C. § 2000e-5(k).

[11] N.Y.C. AD. C. § 8-502(f).

[12] 434 U.S. 412 (1978).

[13] *Id.* at 434. *See also Carrion v. Yeshiva Univ.* 535 F.2d 722, 727 (2d Cir. 1976); *Evans v. Port Auth. of N.Y. & N.J.,* No. 00 Civ. 5753 (LAK), 2003 WL 1842876 (S.D.N.Y. Apr. 1, 2003).

While a plaintiff's bad faith is not a prerequisite to an award of attorneys' fees, its presence provides "an even stronger basis for charging him with attorney's fees incurred by the defense."[14]

Franchitti's claim here was frivolous, unreasonable, groundless, and brought in a bad faith effort to extort money from Bloomberg. This is not a case in which a plaintiff lost because a debatable point of law was resolved against the plaintiff. Nor is it a case in which the evidence permitted a factual determination to go either way, and a jury rendered a verdict that establishes no more than that it was not persuaded of the correctness of a plaintiff's position by a preponderance of the evidence. It is, rather, one in which I have found that plaintiff made up most of the events about which he testified and materially exaggerated the rest. He did so for a venal purpose. I could not in good conscience fail to find that the *Christianburg* standard is satisfied.

Franchitti nevertheless argues that I should not award attorneys fees or, at least, not as high a figure as defendants seek. His arguments are almost entirely baseless. Nevertheless, I find one persuasive.

Plaintiff argues that a fee award should be denied because the defendants' denial that Dr. Hutchins recommended Franchitti's termination also was false or, at least, misleading.[15] To the extent he uses this fact to suggest that my finding that Franchitti lied and that his claim was bogus

---

The same standard governs under § 1988. *See Olivieri v. Thompson,* 803 F.2d 1265, 1272-73 (2d Cir. 1986).

[14] *Christianburg,* 434 U.S. at 422.

[15] Certainly the Court agrees that the thrust of the defendants' position on this point was false in that defendants sought to create the impression that Dr. Hutchins simply reported facts to supervisors who, on their own, decided to fire Franchitti. In fact, Dr. Hutchins wanted to be rid of Franchitti, regardless of the precise form of words that she employed.

was incorrect, the argument is without merit.[16] It is baseless also to the extent that he argues that his own misconduct should be excused because the other side also was less than straightforward. Nevertheless, an award of attorneys' fees in a case like this rests in the sound discretion of the trial court. And the Court will not exercise its discretion in favor of a party that dissembled, as Bloomberg did. While the point on which it was not candid was not the core of the case, the

---

[16]

Plaintiff posits that the denial that Dr. Hutchins recommended termination was equivalent to advancing a pretextual reason for an employment decision and that Bloomberg's dissembling therefore gives rise to an inference of discrimination. Pl. Mem. 3. There are at least two problems with the argument.

First, Bloomberg's stated reasons for terminating Franchitti were not a pretext. The fact that it probably was not honest about whether Dr. Hutchins recommended the termination, as opposed to merely reporting facts concerning his performance, does not go to the question whether there were legitimate business reasons for Bloomberg's decision. I have found that there were. In any case, the trial is over and the case has been decided.

Second, plaintiff ignores the Second Circuit's wise recognition that "the label 'pretext' does not answer the question: pretext for what? In some cases, an employer's proffered reason is a mask for unlawful discrimination. But discrimination does not lurk behind every inaccurate statement. Individual decision-makers may intentionally dissemble in order to hide a reason that is non-discriminatory but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, spite, or personal hostility." *Fisher v. Vassar College,* 114 F.3d 1332, 1337 (2d Cir. 1997) (en banc), *cert. denied,* 522 U.S. 1075 (1998). In this case, I have found that Bloomberg's claim that Dr. Hutchins did not recommend Franchitti's termination, although she concededly reported on his performance and possible misconduct, was the product of a misguided litigation strategy, not an attempt to cover up discrimination or retaliation. Bloomberg appears to have tried to distance Dr. Hutchins from the decision to terminate Franchitti to guard against the possibility that a trier of fact would credit plaintiff's claim of harassment and anti-French animus. As Dr. Hutchins worked in very close physical proximity to Franchitti, it appears to have been concerned that a finding of harassment and anti-French animus in the workplace would taint Dr. Hutchins and, if she recommended the termination, the decision to fire Franchitti. On the other hand, if Dr. Hutchins made no recommendation, and if the decision makers were strangers to the alleged incidents, Bloomberg probably thought it had a chance of avoiding liability for the termination because it might have prevailed on an argument that the termination was unaffected by discrimination. This of course is not to excuse its failure to be entirely candid. It is only to say that there is a plausible and, to me, persuasive reason not to infer from its inappropriate behavior that plaintiff was a victim of discrimination.

importance of telling the truth in judicial proceedings is just too great.

*Conclusion*

For the foregoing reasons, defendants' motion for an award of attorneys' fees is denied.

SO ORDERED.

Dated: February 1, 2006

_____<br>
Lewis A. Kaplan<br>
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)